UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jerome Antonio Haggwood, | ) | C/A No. 5:15-cv-03271-RMG-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| John Magill; | ) | |
| Holly Scaturo; | ) | |
| Kimberly Poholchuck, and | ) | |
| Warden Stevenson, | ) | |
| | ) | |
| Defendants. | ) | |

Jerome Antonio Haggwood ("Plaintiff"), a civil detainee in the custody of the South Carolina Department of Mental Health ("SCDMH") through its Sexually Violent Predator Treatment Program ("SVPTP"), filed this 42 U.S.C. § 1983 action alleging that Defendants violated his constitutional rights. This matter is before the court on two Motions for Summary Judgment filed by Defendants Magill, Scaturo, and Poholchuck on February 15, 2016 and by Defendant Stevenson on the same day. ECF Nos. 27, 28. As Plaintiff is proceeding pro se, the court entered a *Roseboro* Order[1] on February 16, 2016, advising Plaintiff of the importance of such motions and of the need for him to file adequate responses. ECF No. 30. Plaintiff filed one Response to both Motions for Summary Judgment by placing it with his institutional mailroom on June 8, 2016. ECF Nos. 58, 58-3. Defendant Stevenson filed a Reply on June 22, 2016, ECF No. 61, and Defendants Magill, Scaturo, and Poholchuck filed a Reply on June 23, 2016, ECF No. 62. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d)

---

[1] *See Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

and (e), D.S.C. Because the Motions for Summary Judgment are dispositive, a Report and Recommendation ("Report") is entered for the court's review.

I.      Background

Plaintiff is civilly detained in the SVPTP, which is housed in the Edisto and Congaree units of the Broad River Correctional Institution, part of the South Carolina Department of Corrections ("SCDC"). ECF No. 28-1 at 1.[2] Defendant Magill is the current Director of SCDMH, Defendant Scaturo is the Director of the SVPTP, Defendant Poholchuck is the Program Coordinator of the SVPTP, and Defendant Stevenson is the former Warden of Broad River Correctional Institution. Plaintiff filed his Complaint by presenting it for mailing to his institutional mailroom on August 13, 2015, alleging constitutional claims against Defendants based on the conditions of his confinement. ECF No. 1-1. Specifically, Plaintiff refers to the "first, fourth, fifth, sixth, eighth . . . [and] fourteenth amendment rights under the U.S. Constitution . . ." and contends that Defendants, collectively,[3] are responsible for policies and

---

[2] The SVPTP operates in this location under an inter-agency agreement between SCDMH and SCDC under which SCDMH "retains all control, care, and treatment aspects inside the Edisto and Congaree units, including internal guards, routine maintenance, and sanitation. SCDC provides outside security, meals, laundry services, and chaplain services." ECF No. 28-1 at 1-2 (citing *In re Treatment & Care of Luckabaugh*, 568 S.E.2d 338, 345 (S.C. 2002)).

[3] As noted by Defendants, ECF Nos. 27-1 at 6; 28-1 at 6, each Defendant's name is listed individually only in the caption of the Complaint and on the page of the complaint form provided for a listing of the defendants. Throughout the remainder of the Complaint, Plaintiff refers to them collectively as "the Defendants." Under the rule of liberal construction of pro se pleadings, the use of the collective term after listing all persons individually twice may be reasonably inferred to provide sufficient notice to Defendants that Plaintiff's allegations are against each of them. *Brown v. Brock*, 632 F. App'x 744, 746 (4th Cir. 2015) ("allegations in a pro se complaint are to be liberally construed, and a court should not dismiss an action for failure to state a claim "'unless after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'") (citing *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)); *Spencer v. Earley*, 259 (4th Cir. 2008) (reversing dismissal of pro se complaint; "while a complaint comprised solely of labels and conclusions is insufficient to

2

procedures that allegedly violate his constitutional rights because they subject him to double bunking, unsafe food, and mold and mildew on the walls of his living area. Compl. 4-6, ECF No. 1. Plaintiff also asserts that Defendants have been deliberately indifferent to his medical condition because the treatment offered in the SVPTP is allegedly inadequate, Defendants have subjected him to corporal punishment, and Defendants have forced him to wear a yellow jumpsuit whenever he is being transported in public, which allegedly exposes him to negative stigma from members of the public. *Id*. at 5-6. Plaintiff also asserts that he is being racially discriminated against because "a disproportionate number of caucasin [sic] residents are being and have been released compared to Black residents." *Id*. at 6. Plaintiff sues each Defendant officially and individually, *id*. at 4, and requests monetary compensation in the sum of $1,000,000.00; punitive damages, and injunctive and declaratory relief. *Id*. at 8.

II.     Standard of Review

---

satisfy this rule, specific facts, elaborate arguments, or fanciful language are not necessary."). Moreover, although it is admittedly somewhat short on facts and long on legal conclusions, this Complaint sufficiently satisfies Federal Rule of Civil Procedure 8, *see Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)), survived the court's initial-review process, and was served on the parties because Plaintiff's allegations that "the Defendants" were responsible for allegedly unconstitutional policies and procedures relating to Plaintiff's conditions of confinement and had personal knowledge of the conditions -- taken as true as they must be at the pleading stage -- and reasonable inferences from those allegations state facially plausible claims for relief against each Defendant. *See, e.g., Chennault v. Mitchell*, 923 F. Supp. 2d 765 (E.D. Va. 2013) (supervisory official may be held liable for a policy or custom that caused a constitutional injury) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-92 (1989); *Bradshaw v. Harden*, No. 7:10CV00225, 2010 WL 2754319, at *3 (W.D. Va. July 12, 2010) (where a plaintiff fails to prove that supervisory defendants knew that a policy was not being enforced, he cannot hold them liable for tacitly authorizing non-enforcement), *aff'd*, 401 F. App'x 805 (4th Cir. 2010). The court should not accept Defendants' invitations to revisit the issue of plausibility as it was settled at the conclusion of the initial-review process.

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments submitted, the undersigned recommends that Defendants' motions be granted, thus ending this case against them.

III.    Analysis

Plaintiff filed this litigation pursuant to 42 U.S.C. § 1983 alleging claims against four Defendants, collectively. Defendants Magill, Scaturo, and Poholchuck ("the SCDMH Defendants") filed one Motion for Summary Judgment, and Defendant Stevenson filed a separate Motion for Summary Judgment. Both Motions argue that Defendants are entitled to judgment as a matter of law as to all of Plaintiff's claims. Because Plaintiff's allegations do not vary as to the multiple Defendants and because Defendant Stevenson expressly adopted and joined in the Motion filed by the SCDMH Defendants, ECF No. 27-1 at 2, this Report discusses Defendants' motions together and addresses each of Plaintiff's claims in turn.

    A.    Conditions of Confinement: Corporal punishment, double bunking, mold, mildew, unsanitary food

Plaintiff contends Defendants' policies result in conditions of confinement that violate his constitutional rights because the conditions are "in such an inhumane state that he is being treated physically worse than a prisoner." ECF No. 1 at 4. Specifically, Plaintiff alleges that he is subjected to corporal punishment, double bunking of persons designated "sex offenders" places his safety in danger, and that the food provided by SCDC is "contaminated and or disrespected by inmates and or third parties." *Id*. at 5. Plaintiff also alleges that living conditions in the SVPTP "are inhumane and illegal by any standards . . ." because "mold mildew and even asbestos is present in large amounts in both living units of the S.V.P.T.P. . . . ." *Id.* at 6. Defendants submit that they are entitled to summary judgment as to this claim because Plaintiff has failed to prove that the alleged conditions rose to the level of constitutional violations because Plaintiff has not shown that he suffered any injury from the conditions alleged. Defendants also contend that Plaintiff has not shown that the SCDMH Defendants failed to exercise appropriate professional judgment and discretion in making decisions about the conditions in the SVPTP. ECF Nos. 27-1 at 9; 28-1 at 11. Finally, Defendants contend that Plaintiff has not shown that any of them were personally aware of or intentionally disregarded any of the conditions of which he complains. ECF Nos. 27-1 at 9-10; 28-1 at 15-16.

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo,* 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed. *See Seling v. Young,* 531 U.S. 250, 265 (2001); *Youngberg,* 457 U.S. at 324. When deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must balance the individual's liberty interest against the relevant state interests, but deference must be

given to the decisions of professionals. *Youngberg,* 457 U.S. at 321. "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. *Id.* at 322.

"A civilly committed individual under the SVPA most closely resembles the custody status of a pre-trial detainee." *Treece v. McGill,* No. 3:08-3909-DCN-JRM, 2010 WL 3781695, at *4 (D.S.C. Sep. 21, 2010). A pretrial detainee's § 1983 claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.,* 463 U.S. 239, 244 (1983). In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988).

Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir. 1996). Where claims of unconstitutional conditions of confinement are concerned, in order to determine whether a prison official has violated a prisoner's Eighth Amendment rights (or a pretrial detainee or mental patient's Fourteenth Amendment rights), a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth

6

Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). However, not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 537 (1979)). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The Fourth Circuit has held that in order to state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)).

1. Corporal Punishment and Double Bunking

In this case, Plaintiff conclusorily asserts that his constitutional rights were violated by each Defendant, but he fails to support those broad allegations with any evidence that disputes Defendants' evidence showing that corporal punishment is not used on SVPTP detainees and that the double bunking of detainees in the SVPTP is done under a policy that favors single rooms, but that provides standards for the exercise of professional judgment in making decisions about who may share rooms when the population of the SVPTP is such that double bunking is necessary. ECF Nos. 28-2 at 3-4; 28-3 (double bunking policy). While Plaintiff attaches to his

Response copies of Defendants Scaturo and Poholchuck's responses to his discovery requests, ECF No. 58-2, and a copy of the SVPTP Behavioral Expectations Policy, ECF No. 58-3, he does not refer to any particular response or policy provision or base any arguments on the responses or policy. In any event, the discovery responses and the contents of the policy do not conflict with the contents of these Defendants' affidavits in this case. Furthermore, Plaintiff does not dispute the contents of the affidavit of Defendant Scuturo wherein it is noted that corporal punishment is not used and that Plaintiff never availed himself of the available grievance process for complaints about bunking assignment. ECF No. 28-2 at 3-4. Finally, although Plaintiff asserts that all of his conditions-of-confinement claims "pertain to [him]," ECF No. 58 at 3, he does not assert that he suffered any physical or emotional injury as a result of any corporal punishment or double-bunking situation. As a result, it is presumed that Defendants exercised reasonable professional judgment in this regard, *Youngberg*, 457 U.S. at 323, and Plaintiff fails to satisfy the objective component of a claim of unconstitutional conditions of confinement. Although he alleges that the double bunking places his physical safety in danger, ECF No. 1 at 5, such an unsupported allegation is not sufficient to show an injury because it is not concrete and particularized and actual or imminent. Instead, the broad allegation indicates that any potential injury is conjectural, hypothetical, and speculative, and not an injury in fact arising from the double bunking. *See Roman v. LaManna*, No. 8:05-cv-2806-MBS, 2006 WL 2370319, at *4 (D.S.C. Aug. 15, 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff's conclusory statements and bald allegations without any evidentiary support do not create a genuine issue of material fact. *White v. Boyle*, 538 F.2d 1077, 1079 (4th Cir. 1976). In light of the evidence provided by Defendants, Plaintiff's submissions fail to show that any

genuine issue of material fact exists as to whether his constitutional rights were violated by double bunking. Accordingly, summary judgment should be granted as to this claim.

        2.      Contaminated Food

Although Plaintiff broadly asserts that the food served in the SVPTP is "contaminated and or disrespected by inmates and or third parties," he fails to show that he, personally, suffered any injury from the food that is provided by SCDC under the inter-agency agreement. Defendant Poholchuck's affidavit shows that there are reasonable safeguards in place with regard to food service in the SVPTP to address any issues of contamination that might arise. She avers that despite the established policy for reporting problems with food trays, she has no personal awareness of any contaminants being found in Plaintiff's food. ECF No. 28-3 at 1-2. Plaintiff does not dispute Poholchuck's statement and provides no evidence showing that he made any complaint about food contamination, much less showing any injury that Plaintiff suffered as a result of being served contaminated food. While he attaches to his Response a record of two food-related complaints filed by other detainees, ECF No. 58-3 at 8-12, Plaintiff does not reference those reports or make any argument based on them in his Response. In any event, those reports, at most, show food-related problems experienced by other detainees. Plaintiff cannot recover damages or other relief for other persons' claims. *See Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (a *pro se* prisoner cannot be an advocate for others). In absence of any showing of personal injury from contaminated food, Plaintiff fails to satisfy the objective component of a Fourteenth Amendment due-process claim and, therefore, fails to show that his allegations about the SVPTP food rise to the level of a constitutional violation. Plaintiff's conclusory statements and bald allegations without any evidentiary support do not create a genuine issue of material fact. *White v. Boyle*, 538 F.2d at 1079. Accordingly, summary

judgment should be granted as to this claim.

### 3. Mold, mildew, asbestos

Plaintiff's allegations that there is mold, mildew, and asbestos in the areas where the SVPTP operates do not rise to the level of constitutional violations because he fails to dispute the affidavits from Defendants Scaturo and Stevenson and from SVPTP employee Paula Prince. Those affidavits contain notarized statements denying Plaintiff's allegations and showing that routine maintenance of the SVPTP area is performed by SCDC personnel whenever the need arises, that a new roof and ceiling were installed during 2014-15, that duct work in units housing the SVPTP are cleaned twice a year, that the common areas are cleaned daily, and that detainees are responsible for cleaning their own rooms. ECF Nos. 27-2 at 3, 28-2 at 4; 28-5 at 1-2. Additionally, Plaintiff does not allege and has not provided any proof that he suffered any personal injury from the alleged conditions of his confinement. In this case, Plaintiff shows no conduct on Defendants' part that approaches "deliberate indifference," and he fails to prove that he faces "a substantial risk of serious harm" from any of the conditions of confinement of which he complains. As a result, Plaintiff fails to satisfy either the objective component or the subjective component of a Fourteenth Amendment claim of unconstitutional conditions of confinement. Accordingly, the undersigned recommends that summary judgment be granted as to this claim.

### B. Medical Indifference: Inadequate Treatment

Plaintiff asserts that Defendants "have allowed the treatment regimen . . . to fall below constitutional standards." ECF No. 1 at 5-6. Defendants contend that evidence shows that because all SVPTP treatment decisions are made within "accepted professional judgment, practice, or standards" and that those decisions were applied to all detainees in the SVPTP,

including Plaintiff, no indifference is shown. ECF No. 28-1 at 16-17. Plaintiff does not respond to Defendants' contentions and does not mention medical indifference in his Response to the Motions for Summary Judgment. ECF No. 58.

Federal courts have held that a plaintiff's failure to respond to a point in a motion for summary judgment constitutes a concession on that point. *See Petrucelli v. Dep't of Justice*, No. 11-1780(RBW), 2014 WL 2919285, at *7 (D.D.C. June 27, 2014) (prisoner case; citing *Maydak v. DOJ*, 579 F. Supp. 2d 105, 107 and holding that lack of response to a point raised in a motion for summary judgment amounts to a concession of that point) (D.D.C. 2008); *see also Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009) ("[F]ailure to oppose a basis for summary judgment constitutes waiver of that argument."). Furthermore, the United States Supreme Court has stated that "deliberate indifference entails something more than mere negligence . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. *Id.*; *see Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (subjective component not shown where no allegations that certain defendants knew of the alleged deprivation or could take action to change medical official's orders "for [prisoner's] own protection"). Additionally, a detainee does not have a right to receive the treatment of his choice. *Jackson v. Fair*, 846 F.2d 811, 817-18 (1st Cir. 1988); *Sanchez v. Coleman,* No. 2:13-CV-0982, 2014 WL 7392400, at *7 (W.D. Pa. Dec. 11, 2014).

Plaintiff's failure to mention medical care in his Response to Defendants' Motions for Summary Judgment amounts to a concession that the SVPTP treatment program comports with professional standards and, therefore, is not unconstitutional. In any event, even if Plaintiff had

reaffirmed the contentions made in his Complaint, any medical-indifference claim fails because the evidence from Defendant Scaturo clearly shows that Plaintiff is receiving medical treatment in the SVPTP even though, perhaps, not of the amount and type that he desires. Although he attaches a copy of the SVPTP Behavioral Expectations Policy to his Response, ECF No. 58-2 at 1-6, Plaintiff does not make any specific reference to any aspect of the policy in the body of the Response, and he makes no argument that any Defendant departed from reasonable professional judgment or standards in connection with their medical-care decisions relating to Plaintiff's treatment. As a result, no medical indifference is shown in this case and the undersigned recommends that summary judgment be granted as to this claim.

    C.    Yellow Jumpsuit

Plaintiff alleges that his constitutional rights are being violated by his having to wear a yellow jumpsuit when he is in public because it "stigmatize[s]" him and "scare[s] the public." ECF No. 1 at 6. Defendants contend that Plaintiff cannot show a constitutional violation because all persons in the SVPTP are treated alike and must wear the yellow jumpsuit. ECF No. 28-1 at 14. Defendants also contend that the yellow jumpsuit policy was implemented "as a safety measure for the SVPTP employees and residents." *Id*. Plaintiff responds that he "is being discriminated against by the wearing of a yellow jumpsuit just for transportation purposes. . . ." ECF No. 58 at 2. Plaintiff responds that the policy is meant "to frighten the public and is a clear violation of [his] equal protection rights under the Fourteenth Amendment." *Id*.

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "Once this showing is made, the court proceeds to determine

whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.* A prisoner can make an equal protection claim if he is singled out as an individual for "arbitrary and irrational treatment," with no rational basis for such disparate treatment, even if one is not being discriminated against as a member of a certain group. *See Village of Willowbrook v. Olech,* 528 U.S. 562 (2000); *Willis v. Town of Marshall, N.C.,* 426 F.3d 251, 263 (4th Cir. 2005). When equal protection challenges arise in a prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner. *Veney v. Wyche,* 293 F.3d 726, 730–32 (4th Cir. 2002). In such instances, a prisoner claiming an equal protection violation must allege facts demonstrating "that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination," and the court must determine whether the disparate treatment is "reasonably related to any legitimate penological interest." *Id*.

Plaintiff' has presented no evidence disputing Defendant Scutaro's affidavit wherein she avers that all persons in the SVPTP program are subject to the yellow-jumpsuit policy and that the policy was implemented for the safety of SVPTP detainees and employees. ECF No. 27-2 at 5. As a result, Plaintiff fails to show that he is being treated differently from similarly situated persons or that he is being singled out and fails to dispute Defendants' contention that there is a penological interest of safety to detainees and employees justifying the jumpsuit policy. Plaintiff's equal-protection claim also fails because his allegations of discrimination and prejudice are "merely conjectural and speculative." *Douglas v. McCarty*, 87 F. App'x 299, 301-02 (4th Cir. 2003) (citing *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003)). As a result, no

violation of equal protection is shown in this case, Plaintiff is not entitled to relief and summary judgment should be granted on this claim.

        D.        Racial Discrimination in the Release of Detainees

Plaintiff alleges that he is being racially discriminated against because "a disproportionate number of caucasin [sic] residents are being and have been released compared to black residents." ECF No. 1 at 6. Defendants Magill, Scaturo, and Poholchuck contend that Plaintiff's allegations are too conclusory to hold any of them liable for discrimination and deny that any of them discriminated against Plaintiff. These Defendants assert that Defendant Scaturo's affidavit shows that decisions about release of detainees are based on the SCDMH's determination that a particular detainee's "mental abnormality or personality disorder has changed and that he is not likely to commit acts of sexual violence." Where such a determination is made, then the detainee can petition a court for release. ECF No. 28-1 at 18. Defendant Stevenson contends that he was not involved in any aspect of decisions about who to release from the SVPTP because his involvement with the program was limited to supervision of "outside security, meals, and sanitation." ECF No. 27-1 at 6. Plaintiff does not specifically respond to Defendants' contention and does not reassert "racial discrimination" in his Response.

While racial discrimination is actionable under § 1983, *see, e.g., Henry v. Van Cleve,* 469 F.2d 687 (5th Cir. 1972), mere conclusory allegations of discrimination are insufficient to state such a claim. *Chapman v. Reynolds,* 378 F. Supp. 1137 (W.D. Va. 1974); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986) ("[Plaintiff's] conclusory allegations of . . . discrimination are not sufficient to establish liability."); *Jaffe v. Fed. Reserve Bank of Chicago,* 586 F. Supp. 106, 109 (N.D. Ill.1984) (A plaintiff "cannot merely invoke his race in the course of the claim's narrative and automatically be entitled to pursue relief").

As an initial matter, Plaintiff's failure to respond to Defendants' contentions on his claim of racial discrimination amounts to a concession to those contentions and a waiver of this claim. *See Satcher v. Univ. of Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d at 735; *Petrucelli v. Dep't of Justice*, No. 11-1780(RBW), 2014 WL 2919285, at *7. Nevertheless, even if the court were to find that Plaintiff's broad and conclusory statement that "plaintiff has clearly shown in his initial complaint . . . that the defendant have violated plaintiff's 1st, 4th, 6th, 8th and 14th constitutional amendment rights, to include equal protection Due Process" sufficiently addressed Defendants' contentions to avoid waiver and concession, Plaintiff's claim of racial discrimination still fails. Petitioner has not provided any facts or evidence to support his conclusory assertion that more Caucasians than Blacks are released from the SVPTP. Also, he has not submitted any evidence to dispute the Affidavit of Defendant Scaturo which sets out a cognitive behavioral therapy-based treatment plan that is non-discriminatorily applied to all detainees in the program and in which she specifically denies having ever racially discriminated against Plaintiff. ECF No. 28-2 at 5. Plaintiff fails to show that any Defendant acted outside of their reasonable professional judgment, practice, or standards in making determinations of who to release from the program and who to retain. In absence of supporting proof, Plaintiff's conclusory allegations and assertions fail to show that any genuine issues of material fact exist on this point. Accordingly, Plaintiff is not entitled to relief and summary judgment should be granted on this claim.

  E.  Property Seizure

In his Response to the Motions for Summary Judgment, Plaintiff states for the first time in this case that "Plaintiffs property seized by Defendants contrary [to] law had no foundation in

reasonableness."[4] ECF No. 58 at 2. Defendants reply that it is too late for Plaintiff to raise another issue in this case. ECF Nos. 61 at 4; 62 at 3.

A plaintiff may not argue a new claim in a response to a summary judgment motion. *See White v. Roche Biomedical Labs., Inc.,* 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment."); *see also S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (parties cannot amend their complaints through briefing or oral advocacy); *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004) (plaintiff may not amend complaint through argument in brief opposing summary judgment); *Bridgeport Music, Inc. v. WM Music Corp.,* 508 F.3d 394, 400 (6th Cir. 2007) (a party may not expand its claims to assert new theories in response to summary judgment).

This claim is not properly before this court because it was not part of the Complaint and it cannot be raised for the first time in response to a motion for summary judgment. Furthermore, even if it were properly before this court, Plaintiff minimal and conclusory allegations lacking in factual specifics fail to state a plausible claim upon which relief could be granted. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Godbey v. Simmons*, No. 1:11cv704 (TSE/TCB), 2014 WL 345648, at *4 (E.D. Va. January 30, 2014) ("Whether filed by a pro se litigant or not, 'claims brought in federal court are subject to the generally applicable standards set forth in the

---

[4] This appears to be the only potential claim with Fourth Amendment ramifications although Plaintiff's allegations do not directly reference that Amendment. Plaintiff does make a general allegation at the beginning of his Response that several of his constitutional rights were violated. ECF No. 58 at 1. While the previous discussion includes claims arising under the Eighth and Fourteenth Amendments, Plaintiff also includes the First and Sixth Amendments in his conclusory statement. The First Amendment governs the right to free speech and religion and Sixth Amendment governs the right to counsel and other fair-trial rights and none of Plaintiff's claims involve free-speech, religion, trial or legal counsel-related issues. Thus, despite his broad statement otherwise, the undersigned finds that Plaintiff does not raise any claims relating to either his First or Sixth Amendment rights.

Supreme Court's entire Rule 8(a) jurisprudence, including *Twombly* and *Iqbal*.'") (quoting from *Cook v. Howard*, 484 F. App'x 805, 810 (4th Cir. 2012)). Accordingly, Plaintiff is not entitled to relief and summary judgment should be granted on this claim.

F.     Eleventh Amendment Immunity

All four Defendants contend that they are entitled to Eleventh Amendment immunity from Plaintiff's damage claims in their official capacities as State of South Carolina officials. ECF Nos. 27-1 at 11-12; 28-1 at 4-5. Plaintiff responds that Defendants are not immune because he sues them in both official and individual capacities. ECF No. 58 at 3.

To the extent that Plaintiff is suing Defendants in their official capacities, Defendants are entitled to summary judgment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The United States Supreme Court has long held that the Eleventh Amendment also precludes suits against a state by one of its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). This immunity extends not only to suits against a state per se, but also to suits against agents and instrumentalities of the state. *Cash v. Granville Cnty. Bd. of Ed.*, 242 F.3d 219, 222 (4th Cir. 2001).

As all Defendants are agents or employees of the State of South Carolina when acting in their official capacities, they are not "persons" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a state nor its officials acting in their official capacities are 'persons' under § 1983."). A state cannot, without its consent, be sued in a District Court of the United States by one of its own citizens upon the claim that the case is one that arises under the Constitution and laws of the United States. *Edelman*, 415 U.S. at

663. The State of South Carolina has not consented to be sued in this case. S.C. Code Ann. § 15-78-20(e). As arms of the state, Defendants are immune from suit under the Eleventh Amendment. Accordingly, the undersigned recommends that Plaintiff's claims against Defendants in their official capacities be dismissed.

G.     Qualified Immunity

All Defendants move for summary judgment arguing they are entitled to qualified immunity because Plaintiff failed to establish any claims that rose to the level of a constitutional deprivation and that these Defendants' actions were reasonable in light of the existing law. ECF Nos. 27-1 at 14; 28-1 at 20. Plaintiff responds that no Defendant is entitled to qualified immunity because "they violated clealy [sic] established constitutional rights of Plaintiff, as well as each defendant was or had personal involvement." ECF No. 58 at 2.

The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982), established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context

of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case – that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted – then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

As previously stated, these Defendants did not transgress any of Plaintiff's constitutional rights that they were aware of in the discretionary exercise of their respective professional judgments. The evidence shows that these Defendants also performed the discretionary functions of their respective official duties in an objectively reasonable fashion. Thus, to the extent the district judge disagrees with the previous recommendations and finds that a constitutional violation occurred, the undersigned recommends that these Defendants be granted qualified immunity.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that the Defendants' Motions for Summary Judgment, ECF Nos. 27, 28, be granted, and that Plaintiff's case against Defendants Magill, Scaturo, Poholchuk, and Stevenson be dismissed.

IT IS SO RECOMMENDED.

June 27, 2016                                          Kaymani D. West
Florence, South Carolina                               United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).