IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jerome Antonio Haggwood, ) | Civil Action No. 5:15-3271-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| John Magill, Holly Scaturo, Kimberly ) | |
| Poholochuck, *and* Warden Stevenson, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on the Report and Recommendation of the Magistrate Judge, recommending summary judgment for Defendants. For the reasons set forth below, the Court adopts the Report and Recommendation in part and declines to adopt it in part, and grants Defendants' motions for summary judgment in part and denies them in part without prejudice.

I.  **Background**

Plaintiff Jerome Antonio Haggwood is a civil detainee in the custody of the South Carolina Department of Mental Health ("SCDMH"). Plaintiff is held in the Sexually Violent Predator Treatment Program ("SVPTP"), which is housed in the Edisto and Congaree units of the Broad River Correctional Institution ("Broad River"). The SCDMH "retains all control, care, and treatment aspects inside the Edisto and Congaree units, including internal guards, routine matinenance, and sanitation. [The South Carolina Department of Corrections] provides outside security, meals, laundry services, and chaplain services." (Defs.' Mem. Supp. Summ. J. 1–2, Feb. 15, 2016, Dkt. No. 28-1.) Defendant Robert Stevenson was the Warden of Broad River; the other Defendants (the "SVPTP Defendants") are SCDMH officials who supervise the SVPTP at Broad River.

Plaintiff filed the present action pursuant to 42 U.S.C. § 1983 on August 13, 2015, alleging deprivation of his constitutional rights due to his conditions of confinement, deliberate indifference to his medical needs, racial discrimination, and the requirement that he wear a yellow jumpsuit whenever he is transported in public. His conditions of confinement in the SVPTP are allegedly unconstitutional because of corporal punishment, double bunking practices that place him in physical danger, deliberately contaminated food, and mold, mildew, and asbestos in his living areas. Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages.

On February 15, 2016, Defendants moved for summary judgment as to all claims. Warden Stevenson filed a separate motion for summary judgment that expressly joined in the SVPTP Defendants' motion for summary judgment. The Magistrate Judge recommended granting Defendants' motions for summary judgment on June 27, 2016. Plaintiff timely mailed his objections to the Report and Recommendation on July 14, 2016.

## II. Legal Standard

### A. Report and Recommendation of the Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

When a proper objection is made to a particular issue, "a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate." *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992). However, "[t]he district court's decision whether to consider additional evidence is committed to its discretion, and

any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "[A]ttempts to introduce new evidence after the magistrate judge has acted are disfavored," though the district court may allow it "when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (listing cases).

### B.     Summary Judgment

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## III. **Discussion**

Involuntarily committed mental patients retain a liberty interest in conditions of reasonable care and safety and in reasonably nonrestrictive confinement conditions. *Youngberg v. Romeo*, 457 U.S. 307, 324 (1982). Due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed. *See Seling v. Young*, 531 U.S. 250, 265 (2001); *Youngberg*, 457 U.S. at 324. "A civilly committed individual under the [Sexually Violent Predator Act] most closely resembles the custody status of a pre-trial detainee." *Treece v. McGill*, Civ. No. 3:08-3909-DCN-JRM, 2010 WL 3781695, at *4 (D.S.C. Sep. 21, 2010). A pretrial detainee's § 1983 claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner," *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988), and so conditions that would violate the Eighth Amendment necessarily violate the Fourteenth Amendment, *see Youngberg*, 457 U.S. at 315–16 ("If it is cruel and unusual punishment to hold convicted criminals in unsafe conditions, it must be unconstitutional to confine the involuntarily committed—who may not be punished at all—in unsafe conditions.").

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). To hold a prison official liable for conditions of confinement that violate a prisoner's Eighth Amendment rights (or a pretrial detainee or mental patient's Fourteenth Amendment rights), a court must analyze "whether the prison official acted with a sufficiently culpable state of mind

(subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991). To claim compensatory damages, a plaintiff must demonstrate actual injury resulting from those conditions. *Williams*, 952 F.2d at 825 & n.2 (noting, in a case involving allegations of unsanitary prison conditions, that "in the absence of a showing of actual injury, [the plaintiff] still would be entitled to nominal damages upon proof of a constitutional violation"). To claim punitive damages, a plaintiff must show the violative conduct at issue "to be motivated by evil motive or intent, or . . . [to involve] reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Finally, to claim injunctive relief, a plaintiff must show a substantial likelihood of future harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

  A. **Conditions of Confinement**

    1. Corporal Punishment

Plaintiff alleges, "Plaintiff is being subject to corporal punishment by defendants." (Compl. ¶ 6.). He provides no further detail. He does not say how he was subjected to corporal punishment, when he was subjected to corporal punishment, or by whom. Plaintiff's allegation fails to meet the minimal standards of notice pleading. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding "naked assertions" of unlawful harm insufficient under Rule 8(a)(2) of the Federal Rules of Civil Procedure). In support of summary judgment, the SVPTP Defendants submit an affidavit stating that SVPTP detainees are never subjected to corporal punishment. (Aff. of Holly Scaturo ¶ 13, Feb. 15, 2016, Dkt. No. 28-2.) Mr. Stevenson submits an affidavit stating that as warden he was not involved in any way with internal SVPTP decisions regarding detainee discipline. (Aff. of Robert M. Stevenson, III ¶ 8, Feb. 11, 2016, Dkt. No. 27-2.) Plaintiff's response does not challenge those affidavits. Nor do Plaintiff's objections to the Report and Recommendation dispute the Magistrate Judge's recommendation regarding corporal punishment

claims. The Court therefore adopts with the Magistrate Judge's recommendation to grant summary judgment for Defendants as to corporal punishment claims.

    2.    Food

Plaintiff's verified complaint alleges that the food Broad River provides SVPTP detainees is sometimes deliberately contaminated. (Compl. ¶ 8.) It also alleges that all Defendants were made aware of the alleged food contamination, yet the contamination continues. (*Id.*) A verified complaint is sufficient to create a genuine factual dispute regarding matters within the personal knowledge of the plaintiff. *See Williams*, 952 F.2d at 823 (4th Cir. 1991). Furthermore, with his objections to the Report and Recommendation, Plaintiff attaches declarations from other SVPTP detainees, who make factual statements from personal knowledge that support Plaintiff's allegations regarding the food. (Decl. of Richard Ridley ¶ 13, July 9, 2016, Dkt. No 65-2 (alleging that razor blades, urine, and feces are present in SVPTP food ant that complaints have been made to Dr. Magill, Ms. Scaturo, and Ms. Pohochuk); Decl. of Larry Hendricks ¶ 14, July 13, 2016, Dkt. No. 65-2 (alleging that SVPTP food has arrived in non-edible condition "numerous times").)

Plaintiff's allegations resemble those in the recent Fourth Circuit case *Brown v. Brock*, 632 F. App'x 744 (4th Cir. 2015). In *Brown*, a prisoner alleged that a prison food services director knowing used a defective can opener that sometimes shaved metal into prisoners' food, that metal shavings had been found in his food several times in the past, that the defendant was made aware of the contamination yet did not stop it, and that on one occasion the prisoner suffered permanent tooth injury from biting metal in his food. 632 F. App'x at 746. The Fourth Circuit held that "[a]llegations of unsanitary food service facilities are sufficient to state a cognizable constitutional claim, so long as the deprivation is serious and the defendant is deliberately indifferent to the need." *Id.* at 747 (citation omitted). "A single incident of finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected; however, evidence of

frequent or regular injurious incidents of foreign objects in food raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation." *Id.* (citing *Green v. Atkinson*, 623 F.3d 278, 280–81 (5th Cir. 2010) (vacating dismissal of complaint that alleged prisoner was injured by metal in his food after similar occurrences in the past and admission by defendant that there was nothing to be done). Similarly, Plaintiff here alleges that unsanitary additions have been found in SVPTP detainees' food several times in the past, that Defendants have been made aware of the contamination, yet contamination continues to occur. Plaintiff has alleged that his food is sufficiently unsanitary to state a cognizable constitutional claim.

In response to Plaintiff's allegations regarding food, the SVPTP' Defendants' brief in support of summary judgment proffers nonresponsive arguments. The SVPTP Defendants state that the food provided to SVPTP detainees "is provided through the BRCI [Broad River] and is the same food served to the inmates of BRCI." (Mem. Supp. Mot. Summ. J. 2 (citing Aff. of Kimberly Poholchuk ¶ 2, Feb. 12, 2016, Dkt. No. 28-4).) That fact is not at issue. They also state that the "record further reflects that no staff member of the SVPTP has tampered with Plaintiff's food or the food of any other resident." (*Id.*) Plaintiff's allegation is that "inmates and or third parties as yet unknown" are adulterating food prepared for the sexually violent predator detainees, and that Defendants are aware of such adulteration yet "have allowed this condition to exist and continue." (Compl. ¶ 8.) The SVPTP Defendants claim, "nutritional staff at BRCI [Broad River] makes all efforts to ensure that the food served is free from contamination." (Mem. Supp. Mot. Summ. J. 2 (citing Poholchuk Aff. ¶ 2 (which actually states, "*It is my understanding that* the BRCI nutritional service staff makes all efforts . . ." (emphasis added))).) The prison nutritional staff members are not defendants in this action, and the SVPTP Defendants' statement about their

activities is supported only by Ms. Polochuk's affidavit. Ms. Polochuk has no apparent basis upon which to offer testimony as to what happens in the prison cafeteria.[1]

A colorable claim of a deprivation of a constitutional right is not sufficient for a § 1983 claim against Defendants, however. Plaintiff must establish that each Defendant personally participated in the deprivation. Notice of a continuing problem with a prison official's power to remedy can suffice to show personal involvement. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). In *Wright*, the Fourth Circuit held that summary judgment was not appropriate where a prisoner asserted that "sufficient personal involvement in prison conditions was present in part because he sent [the warden] a letter alerting him to conditions in the unit while he remained incarcerated there." *Id.*

> Consequently, as compared with notification of a previous denial of due process rights, the notice regarding conditions was notification of a continuing problem which may have been within [Warden] Collins' power to remedy. In addition, as Warden of Maryland Penitentiary, Collins presumably has broad authority over the prison. It is conceivable that, if [Plaintiff] Wright is permitted to press his claim on the merits, he may be able to show sufficient personal involvement stemming either from Collins' duties as Warden or from his receipt of notification from Wright to establish a basis for § 1983 liability. If so, the facts Wright alleges regarding the conditions in the segregation unit may be sufficient to establish a violation of his eighth amendment rights. Consequently, we reverse the district court's grant of summary judgment in favor of Collins on this point.

*Id.* Applied to the present case, the warden of a prison "presumably has broad authority" over the operations of his prison's kitchens. That reasoning applies also to Dr. Magill—the director of the state department of mental health presumably has power to provide persons in the custody of his department with uncontaminated food. The same is true of the director of the SVPTP regarding detainees held in the SVPTP. The Court does not find that these officials actually have such power.

---

[1] Indeed, the Court grants summary judgment regarding claims Ms. Polochuck, *infra*, precisely because the prison's food is beyond her power to control.

The Court, following Fourth Circuit precedent, merely finds that, by virtue of their offices, notice to them of contaminated food provided to detainees creates a *prima facie* case of personal involvement sufficient to preclude summary judgment. The Court cannot make that finding regarding Ms. Poholchuk (*see* Poholchuk Aff. ¶ 1, (describing her job duties as a "program coordinator")), so the Court grants summary judgment as to claims against Ms. Pohochuk. But as to Mr. Magil, Mr. Stevenson, and Ms. Scaturo, Plaintiff has sufficiently alleged (in a verified complaint, with supporting declarations submitted with Plaintiff's objections to the Report and Recommendation) that they were notified of the problem yet it continued despite their presumed power to remedy it. It is not necessary for Plaintiff to allege that Defendants actually prepared and/or delivered Plaintiff's food.

To claim compensatory damages, Plaintiff must show that he was in fact damaged. *Williams*, 952 F.2d at 825. Plaintiff fails to do so. Plaintiff alleges no harm to himself whatsoever from contaminated food. The Court therefore grants summary judgment for Defendants for claims for compensatory damages arising from contaminated food. However, for injunctive relief, Plaintiff need show only a substantial likelihood of harm in the future. *Lyons*, 461 U.S. at 111. The law does not require Plaintiff to suffer an ongoing risk until he is in fact physically harmed. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994). Nor need Plaintiff prove actual injury to receive nominal damages for past conduct, *Williams*, 952 F.2d at 825 n.2, or punitive damages, *Carey v. Piphus*, 435 U.S. 247, 265 n.22 (1978) (noting that the Third Circuit had held that "that such nominal damages would, in an appropriate case, support an award of punitive damages"). The Court therefore denies summary judgment as to Dr. Magill, Mr. Stevenson, and Ms. Scaturo in their personal capacities, for claims for nominal and punitive damages regarding food

contamination, and denies summary judgment as to those Defendants in their official capacities for claims for injunctive relief regarding food contamination.

This denial, however, is without prejudice to a renewed motion for summary judgment. Ms. Scaturo's interrogatory responses, submitted with Plaintiff's opposition to summary judgment, are more responsive to Plaintiff's claim than the SVPTP Defendants' brief in support of summary judgment. She states that she was aware of a September 23, 2015 resident complaint to the South Carolina Law Enforcement Division regarding food, and that an investigation was conducted in response to that complaint. (Def.'s Interrog. Resps., May 5, 2016, Dkt. No. 58-1 at 1.) She also states that "[w]ithin the last year, a system was implemented whereby nursing staff [submit complaints regarding food] to administration for review" and that "locks or ties have been placed on all food coolers and drink containers to prevent possible tampering by SCDC food services staff." (*Id.* at 2; *see also* Stevenson Aff. ¶ 9 ("Reasonable care is taken to prevent any food from being contaminated or tampered with.") If Defendants took reasonable remedial measures upon receiving reports of contaminated food, they may be entitled to summary judgment. *See Farmer*, 511 U.S. at 847 (prison official cannot be held liable for a conditions of confinement claim if, upon learning of a risk of harm, he takes reasonable measures to abate that risk). Defendants therefore may renew their motions for summary judgment on or before September 1, 2016, with supplemental briefing describing any investigation and remedial action taken regarding complaints of food adulteration in the SVPTP. Supplemental briefing in support of any renewed motions for summary judgment should describe the nature and number of complaints received regarding food contamination before remedial action, remedial action taken in response to those complaints, and the nature and number of complaints received regarding food contamination received since remedial action was taken.

3. <u>Double Bunking</u>

Plaintiff complains, in considerable detail, of a specific instance of being assigned to a room with fellow SVPTP detainee John Gist, with whom he did not "get along" and with whom he had a verbal altercation. (*See* Decl. of Jerome A. Haggwood ¶ 1, July 13, 2016, Dkt. No. 65-1.) Plaintiff claims that "double bunking with a civilly committed sex offender who has been adjudicated to be unable to control sexual behavior to the point of being a danger to society" is an unconstitutional condition of confinement. (Compl. ¶ 7.) The Court recognizes that a person sharing a room with a "sexually violent predator" might be at some risk (even if that person is also a "sexually violent predator"), although it is unclear that Mr. Gist, a 69-year-old man, ever presented any genuine risk to Plaintiff, a 33-year-old man. It appears that Plaintiff's true complaint is that his verbal altercations with Mr. Gist resulted in disciplinary actions against Plaintiff. (*See* Haggwood Decl. ¶ 1.) Regardless, no Defendant has any power to control the number of persons placed in the SVPTP or the rooms available; when the number of detainees exceeds the number of rooms, SVPTP staff "exercise professional judgment" in double bunking detainees. (*See* Scaturo Aff. ¶ 14.) Plaintiff expresses his personal disagreement with the exercise of that judgment by SVPTP staff, but fails to raise any genuine factual issue suggesting that Ms. Scaturo or Ms. Poholchuk acted with deliberate indifference to any risk to Plaintiff when Plaintiff and Mr. Gist were assigned a shared room (Dr. Magill and Mr. Stevenson have no plausible involvement with Plaintiff's roommate assignments). The Court therefore grants summary judgment for Defendants as to Plaintiff's double bunking claims.

4. <u>Mold, Mildew, and Asbestos</u>

Plaintiff alleges that SVPTP facilities are contaminated with mold, mildew, and asbestos. (Compl. ¶ 11.) The Court agrees with the Magistrate Judge's conclusions that Plaintiff fails to allege any actual or potential injury from those conditions and that Plaintiff fails to dispute

Defendants' affidavits showing appropriate and regular inspection, maintenance and cleaning of SVPTP facilities. (Scaturo Aff. ¶ 18; Stevenson Aff. ¶¶ 10, 12.) Plaintiff fails to show any serious deprivation of a basic human need or any deliberate indifference by Defendants. *Cf. Strickler*, 989 F.2d 1375. The Court therefore adopts the Report and Recommendation and grants summary judgment for Defendants as to Plaintiff's mold, mildew, and asbestos claims.

### B.    Indifference to Medical Needs

Plaintiff asserts that Defendants "have allowed the treatment regimen . . . to fall below constitutional standards." (Compl. ¶ 9.) He provides no further detail, and he makes no argument that any Defendant departed from reasonable professional standards in connection with any medical decision relating to Plaintiff's treatment. What Plaintiff complains of, beyond simple dissatisfaction with his treatment, is opaque. He does not address this claim in his response to Defendants' motions to dismiss nor in his objections to the Magistrate Judge's recommendation to grant summary judgment for Defendants as to this claim. The Court therefore adopts the Report and Recommendation and grants summary judgment for Defendants as to Plaintiff's indifference to medical needs claims.

### C.    Yellow Jumpsuit

All SVPTP detainees are required to wear a yellow jumpsuit when transported outside the SVPTP facility. (Scaturo Aff. ¶ 19.) Plaintiff alleges that the yellow jumpsuit policy violates his constitutional rights because it "stigmatize[s]" him in violation of the equal protection clause of the Fourteenth Amendment. (Compl. ¶ 10.) An equal protection claim requires that the plaintiff be treated differently from others with whom he his similarly situated. *Morrison v. Garraghy*, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiff's equal protection claim fails because all detainees must wear a yellow jumpsuit when transported. To the extent Plaintiff complains that the policy treats him differently than persons civilly committed in contexts other than the SVPTP, his claim fails

because the policy is rationally related to a legitimate state interest. *Cf. Williams v. Ozmint*, 726 F. Supp. 2d 589, 593 (D.S.C. 2010) (holding that requiring prisoners with a history of sexual misconduct to wear a pink jumpsuit is rationally related to legitimate state interests and does not violate equal protection rights). Moreover, yellow jumpsuits are work only during transport outside of the SVPTP for the obvious purpose of detainee identification, unlike the pink jumpsuits in *Williams v. Ozmint*, which were worn within the prison. *Id.* at 590. The Court therefore adopts the Report and Recommendation and grants summary judgment for Defendants as to Plaintiff's indifference to medical needs claims.

### D.   Racial Discrimination

Plaintiff alleges that "a disproportionate number of caucasi[a]n residents . . . have been released [from the SVPTP] compared to black residents." (Compl. ¶ 10.) No Defendant has authority to release anyone from the SVPTP. *See* S.C. Code § 44-48-110 (providing that if a court finds probable cause "to believe that the person's mental abnormality or personality disorder has so changed that the person is safe to be at large and, if released, is not likely to commit acts of sexual violence, the court must schedule a trial on the issue" and that the "burden of proof at the trial is upon the State to prove beyond a reasonable doubt that the committed person's mental abnormality or personality disorder remains such that the person is not safe to be at large"). Plaintiff fails to respond to Defendants' arguments for summary judgment as to this claim, and Plaintiff likewise fails to object to the Magistrate Judge's recommendation of summary judgment for Defendants as to this claim. The Court therefore adopts the Report and Recommendation and grants summary judgment for Defendants as to Plaintiff's racial discrimination claims.

### E.   Property Seizures

Plaintiff's response to Defendants' motions for summary judgment claims that Defendants unlawfully seized certain property from him. (Pl.'s Resp. Opp'n Summ. J. 2, Dkt. No 58, June 13,

-13-

2016.) Plaintiff complained of no property seizures. (*See generally* Compl.) A plaintiff may not argue a new claim in response to a motion for summary judgment. *See White v. Roche Biomedial Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992). The Court agrees with the Magistrate Judge's conclusion that Plaintiffs' allegations regarding property seizures are not properly before the Court.

### F.     Defendants' Immunity Claims

#### 1.     Eleventh Amendment

The Magistrate Judge erred in concluding that Defendants in their official capacities enjoy Eleventh Amendment immunity from Plaintiff's claims. Private parties may sue state officials in their official capacity for prospective injunctive relief to enforce federal rights. *Ex parte Young*, 209 U.S. 123 (1908). Plaintiff, alleging an ongoing violation of his federally guaranteed rights, seeks, *inter alia*, injunctive relief. *See Green v. Mansour*, 474 U.S. 64, 68 (1985) ("*Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law."). The Court therefore denies Defendants' motion for summary judgment in their official capacities on Eleventh Amendment grounds. The Court however observes that Mr. Stevenson is retired and so orders the Clerk of Court to substitute the current Warden of Broad River in his or her official capacity for Mr. Stevenson in his official capacity. *See* Fed. R. Civ. P. 25(d) (allowing courts to order substitution of a public official's successor in his or her official capacity).

#### 2.     Qualified Immunity

A public official performing a discretionary function enjoys qualified immunity in a civil action for damages if his conduct does not violate clearly established federal rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In other words, "the plaintiff's complaint must allege conduct a reasonable officer would know to be

-14-

unlawful." *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 331 (4th Cir. 2009). The constitutional requirement for uncontaminated food is clearly established. *E.g.*, *Brown*, 632 F. App'x at 747; *Whaley v. Valdez*, 340 F. App'x 241, 243 (5th Cir. 2009); *Goodrick v. Clegg*, 129 F.3d 125 (9th Cir. 1997) ("Eighth Amendment requirements regarding sanitary food were clearly established . . . ."). Defendants therefore cannot claim qualified immunity from Plaintiff's claims regarding contaminated food. As the Court finds Plaintiff's other claims insufficient to survive summary judgment, it need not reach the question of Defendants' qualified immunity regarding those claims.

## IV.  Conclusion

The Court **ADOPTS** Parts I–III.A.1 and Parts III.A.3–III.E and **DECLINES TO ADOPT** Part III.A.2 and Parts III.F–IV of the Report and Recommendation of the Magistrate Judge (Dkt. No. 63). The Court **GRANTS IN PART AND DENIES WITHOUT PREJUDICE IN PART** Defendants' motion for summary judgment (Dkt. No. 28) and Defendant Robert Stevenson's motion for summary judgment (Dkt. No. 27). The Court **GRANTS** summary judgment for Defendant Kimberly Poholchuk as to all claims. The Court **DENIES WITHOUT PREJUDICE** Defendants' motions for summary judgment as to claims against Defendants John Magill, Holly Scaturo, and Robert Stevenson in their official capacities for injunctive relief regarding adulterated food; **DENIES WITHOUT PREJUDICE** Defendants' motions for summary judgment as to claims against Defendants John Magill, Holly Scaturo, and Robert Stevenson in their personal capacities for nominal and punitive damages regarding adulterated food; and **GRANTS** summary judgment for those Defendants as to all other claims. Defendants may renew their motion for summary judgment on or before September 1, 2016.

Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court further **ORDERS** the Clerk of Court to substitute the current Warden of Broad River Correctional Institution in his or her official capacity for Robert Stevenson in his official capacity.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

August 3, 2016
Charleston, South Carolina